UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DANDRE ALEXANDER,

        Plaintiff,                            Case No. 2:16-cv-66

v.                                            Honorable Gordon J. Quist

FRED GOVERN, et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss all of Plaintiff's claims against Defendants Michigan Department of Corrections (MDOC) and the State of Michigan, Plaintiff's equal protection and retaliation claims against all Defendants, and Plaintiff's Eighth Amendment claim based on the use of harassing language against Defendant Govern for failure to state a claim. The Court will serve the complaint against Defendants Govern, Royea, and Lombard based on Plaintiff's Eighth Amendment claim for denial of mental health care.

**Discussion**

    I.       Factual allegations

Plaintiff Dandre Alexander, a state prisoner currently confined at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Resident Unit Supervisor Fred Govern, Corrections Officer Unknown Royea, Corrections Officer Unknown Lombard, the State of Michigan, and the Michigan Department of Corrections.

In his complaint, Plaintiff alleges that on May 21, 2015, Defendant Govern told Plaintiff that he didn't like the way that Plaintiff was helping his neighbor with his legal issues. On May 22, 2015, Plaintiff's neighbor, Prisoner Petty, had a hearing on a misconduct which had been written by Defendant Royea. Plaintiff had written a witness statement for Petty. When Petty returned from the hearing, he told Plaintiff that Defendant Govern had been present and knew that Plaintiff was a witness.

Later that day, Defendant Royea told Plaintiff that he was being moved to another cell in order to separate him from Petty. Plaintiff explained that he had mental health issues and "was having a hard time coping in segregation and that forcing him to re-adjust in another setting would likely send him over the edge where he could no longer handle segregation and force him to end his pain by suicide." Defendant Royea replied that he did not care about Plaintiff's mental health and that Plaintiff should have considered that before he got Defendant Govern "behind [Defendant Royea] authorizing [the move] and we want y'all two split up."

On May 25, 2015, Defendant Royea told Plaintiff that one way or another he was going to be moved to another cell. On May 26, 2015, Defendant Govern told Plaintiff that he was going to be moved for helping Petty. Later that day, Defendant Lombard told Plaintiff that

Defendant Govern was still insisting that Plaintiff be moved. Plaintiff asked Defendant Lombard to contact mental health because he was feeling depressed and unable to cope. Plaintiff showed Defendant Lombard medical documents disclosing his history of mental illness. Defendant Lombard replied that they were from six years ago and did not matter.

A short time later, Defendant Govern walked by Plaintiff's cell and stated, "Just kill yourself Alexander. Nobody cares about your worthless ass." Plaintiff thought about how he had not received any mail from his family in five months and thought that Defendant Govern's statement was true. That night, Plaintiff kited health care, stating that he could no longer endure his situation. Plaintiff made a noose, tied it to the pipe in his cell near the ceiling, and hung himself by the neck. Prison officials cut Plaintiff down from the noose and rushed him to health care. Plaintiff sustained severe neck injuries and was placed on suicide watch for a week.

Plaintiff states that Defendants' conduct violated his First Amendment right to be free from retaliation, his Eighth Amendment rights to mental health care and to be free from cruel and unusual punishment, his Fourteenth Amendment right to equal protection, and his state law rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections or the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d

823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections and the State of Michigan.

Plaintiff makes a conclusory assertion that Defendants' conduct violated his equal protection rights. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Plaintiff does not identify the theory for his equal protection claim. As discussed, prisoners are not considered a suspect class. *Jackson,* 411 F.3d at 619. As a consequence, Defendants' conduct need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary

discrimination" by the state . . . and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

To the extent that Plaintiff alleges that he was treated differently from all other prisoners, he fails to state a claim under the "class-of-one" model. To prove his class-of-one claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegation of discriminatory treatment is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff alleges no facts suggesting that he was intentionally treated differently than any similarly situated person, nor has he identified such person. Therefore, Plaintiff's equal protection claim is properly dismissed.

Plaintiff alleges that Defendants retaliated against him for assisting prisoner Petty with prison litigation by threatening to transfer him to another cell away from prisoner Petty. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that the protected conduct he engaged in was assisting another prisoner with legal work, including the defense of a major misconduct ticket.

> It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims. *See Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Rather, a "jailhouse lawyer's" right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court. *Id.* Thus, only if X's assistance is necessary to vindicate Bell's right of access to the courts can X, too, state a claim of retaliation.

*Thaddeus-X*, 175 F.3d at 395. In this case, it is unclear whether Plaintiff's assistance was necessary to vindicate prisoner Petty's right of access to the courts. Therefore, because the court must construe the facts in the light most favorable to Plaintiff, the court will presume that Plaintiff was engaged in protected conduct.

Plaintiff contends that the adverse action taken by Defendants was threatening to move him to a cell away from prisoner Petty. A transfer can be an adverse action depending on the nature of the transfer. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action). The *Hill* court held that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts.

In *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009), the Sixth Circuit held that a threat to have a prisoner moved out of the unit so that he would lose his job, together with a threat

to influence the warden to have the prisoner transferred to another institution far from his family, were sufficiently adverse to be actionable. *Id.* at 985. The court recognized that a threat is actionable if it otherwise meets the standard that it would deter a person of ordinary firmness from engaging in a protected activity. *Id.* (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003).

In this case, Plaintiff was already being housed in administrative segregation. The threatened transfer was merely to move Plaintiff to a cell away from prisoner Petty. There is no indication that the consequences of such a transfer would result in the loss of a prison job, alienation from his family, or denial of his right of legal representation. In fact, there is no indication that the threatened transfer would have involved a move to another unit. Therefore, the court concludes that Plaintiff has failed to establish that Defendants took an adverse action against him. Accordingly, Plaintiff's retaliation claims are properly dismissed.

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff claims that Defendant Govern violated his Eighth Amendment rights when he told Plaintiff to go ahead and kill himself because no one cared about him. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21,

1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Govern arising from his alleged verbal abuse.

Plaintiff also claims that Defendants Govern, Royea, and Lombard were aware of his need for mental health care, but failed to take appropriate action, which resulted in his suicide attempt. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). Plaintiff's claims that Defendants Govern, Royea and Lombard failed to provide him with mental health care is not clearly frivolous and may not be dismissed on initial review.

Finally, Plaintiff claims that the conduct of Defendants Lombard, Royea, and Govern violated his rights under state law. Because Plaintiff continues to have federal claims pending against these Defendants, the court will retain jurisdiction over Plaintiff's state law claims.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections and State of Michigan will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's claims that Defendants Govern, Royea, and Lombard violated his First Amendment right to be free from retaliation, his Fourteenth Amendment right to equal protection, and his claim that Defendant Govern's verbal harassment violated the Eighth Amendment. The Court will serve the complaint against Defendants Govern,

Royea, and Lombard with regard to Plaintiff's claim that they denied him needed mental health care in violation of the Eighth Amendment, as well as with regard to Plaintiff's state law claims.

An Order consistent with this Opinion will be entered.


Dated: May 6, 2016                               /s/ Gordon J. Quist
                                                                           GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE